**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1 Pennsylvania Plaza, Suite 4905
New York, New York 10119
(267) 857-0849
ian@dereksmithlaw.com
*Attorneys for Plaintiff Ruth Walls*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUTH WALLS,<br><br>                    Plaintiff,<br><br>     v.<br><br>ABINGTON SURGICAL CENTER *and*<br>ABINGTON SURGICAL CENTER, LP d/b/a<br>ABINGTON SURGICAL CENTER,<br><br>               Defendants. | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF** *and* **DAMAGES** |

### NATURE OF THE ACTION

1. Plaintiff Ruth Walls brings this suit seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA") contending that the Defendants failed to provide Ms. Walls with a "reasonable break time to express breast milk for her nursing children for 1 year after the child's birth each time such employee has need to express the milk," and has further failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by employees to express breast milk." 29 U.S.C. § 207(r)(1)(A) and (B).

1

2. Plaintiff also brings this action for personal relief from sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Plaintiffs reserves the right to amend this complaint when her claims under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA") become ripe.

3. Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, statutory penalties, reasonable attorneys' fees, litigation costs and pre- and post-judgment interest.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C §§ 1331 and 1343.

5. The Court will have supplemental jurisdiction over Plaintiff's PHRA and PFPO claims pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiff's FLSA and Title VII claims.

6. Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction here.

**PARTIES**

7. Plaintiff Ruth walls is an adult individual resident of the Commonwealth of Pennsylvania.

8. Defendant Abington Surgical Center is a business organization organized and existing pursuant to the laws of the Commonwealth of Pennsylvania. At all relevant times, Defendant conducted business at 2701 Blair Mill Rd, Ste 35, Willow Grove, PA 19090. At all relevant times, Defendant acted or failed to act through its agents, servants and

employees, each of whom were acting within the course and scope of their employment with Defendant. At all relevant times, Defendant ASC was Plaintiff's employer covered under Title VII and the FLSA.

9. Defendant Abington Surgical Center, LP is a business organization organized and existing pursuant to the laws of the Commonwealth of Pennsylvania. At all relevant times, Defendant conducted business at 2701 Blair Mill Rd, Ste 35, Willow Grove, PA 19090. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Defendant. At all relevant times, Defendant ASC was Plaintiff's employer covered under Title VII and the FLSA.

10. At all relevant times, Defendants were Plaintiff's joint employers.

11. Defendants are hereafter collectively referred to as "Abington Surgical Center."

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

12. Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII, and the PHRA.

13. EEOC issued Plaintiff a Notice of Right to Sue Within 90 Days. Additionally, less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's charges and therefore her PHRA are not yet ripe, however Plaintiff will amend this complaint when they become ripe.

14. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## FACTUAL BACKGROUND

15. Plaintiff is an adult female.

16. Around October 24, 2022, Ms. Walls began her employment with Abington Surgical Center.

17. Prior to her employment, during the interview and hiring process, Ms. Walls informed Abington Surgical Center that she had given birth to her son in April of 2022.

18. Ms. Walls informed Abington Surgical Center that she would need accommodations in order to express breast milk ("pump") during her shifts.

19. Abington Surgical Center informed Ms. Walls that there would be no issue accommodating her need to pump.

20. Ms. Walls reported to her first shift at Abington Surgical Center around October 24, 2022.

21. Ms. Walls was not provided with a place in which she could securely pump.

22. Ms. Walls often had to pump in the conference room of Abington Surgical Center which did not have a lock on the door and was not private.

23. Employees at Abington Surgical Center constantly walked in on Ms. Walls pumping in the conference room and made statements such as "don't worry, we won't look."

24. If Ms. Walls was unable to use the conference room to pump, she would have to pump in any room that she could find without privacy.

25. Ms. Walls expressed her concerns to Emily Sherman, the Assistant Nursing Director with Abington Surgical Center, regarding the fact that she did not have a private, secure location to pump.

26. Sherman informed Ms. Walls that there was no private, secure location for Ms. Walls to pump and she would have to pump wherever she found space without privacy.

27. Ms. Walls asked Sherman if she could pump in one of the fifteen to twenty patients' rooms if they were not in use as they were private and had a lock on the door.

28. Ms. Walls was denied the ability to pump in these private and secure rooms that were not in use.

29. In addition to having no private and secure location to pump, Ms. Walls was given a hard time for her need to take breaks to pump by Sherman and Pam Dunkin, the Director of Nursing at Abington Surgical Center.

30. During the hiring process, Ms. Walls informed Abington Surgical Center, including Sherman and Dunkin that she needed a fifteen to thirty minute break between 10:30am to 11:00am and 2:30pm to 3:00pm to pump.

31. Ms. Walls was informed that this would be no issue and that Abington Surgical Center would be able to accommodate her.

32. Ms. Walls' colleagues, including but not limited to Sherman and Dunkin, often made comments and complaints to Ms. Walls regarding her need to pump.

33. On various occasions, Sherman told Ms. Walls to "hurry up" when she asked to take a break to pump.

34. Ms. Walls was unable to "hurry up" as pumping required twenty-five to thirty minutes each time, which she had expressed to Sherman.

35. Sherman would also state to Ms. Walls "Okay fine, go do it quick" or "Can you do five minutes now and finish later?" when Ms. Walls informed her that she needed to take her break to pump.

36. In addition, Dunkin made comments such as "she will get her break when she gets it" referring to Ms. Walls need to take breaks at certain times to pump.

37. Upon information and belief, Abington Surgical Center could have built a schedule around Ms. Walls to allow her to pump during her needed periods without having interruption to the workflow.

38. Abington Surgical Center refused to accommodate Ms. Walls for her need to pump.

39. On at least two occasions, Ms. Walls spoke with a manager Laura McClinton to address Abington Surgical Center's failure to accommodate Ms. Wall's need to pump in a private and secure location.

40. McClinton failed to provide Ms. Wall's with a reasonable accommodation as requested.

41. On February 27, 2023, Ms. Walls was terminated by McClinton and Sherman.

42. Upon information and belief, Ms. Walls was terminated due to her need to take breaks to pump.

43. As a result of Defendants' conduct, Ms. Walls was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

44. As a result of Defendants' actions, Ms. Walls felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

45. As a result of the acts and conduct complained of herein, Ms. Walls has suffered and will continue to suffer the loss of income, loss of salary, loss of benefits and other compensation which his employment entailed.

46. Ms. Walls also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

47. Ms. Walls has further experienced severe emotional and physical distress.

48. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Ms. Walls demands Punitive Damages as against all the Defendants, jointly and severally.

49. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

50. Defendants'' discriminatory conduct was severe and pervasive, creating a hostile work environment for Ms. Walls.

51. The above are just some examples of some of the discrimination and retaliation to which Defendants' subjected Ms. Walls.

52. Ms. Walls claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

53. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

54. Ms. Walls claims unlawful termination and requests reinstatement.

### <u>COUNT I</u>
### VIOLATIONS OF FLSA PROTECTIONS FOR NURSING MOTHERS
### 29 U.S.C. § 207(r)

55. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

56. Section 4207 of the Patient Protection and Affordable Care Act ("ACA"), which amended Section 7 of the FLSA, 29 U.S.C. § 207, requires employers to provide "reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A).

57. The law further requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 207(r)(1)(B).

58. The FLSA and the "Break Time for Nursing Mothers" provision cover all public agency employees of a State, a political subdivision of a State, or an interstate government agency. 29 U.S.C. § 203(s)(1)(C).

59. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee, including individual supervisors and management officials. 29 U.S.C. § 203(d).

60. Defendants violated Plaintiff's rights under the FLSA by (1) failing to provide reasonable break time for Plaintiff to "express breast milk for her nursing child for 1 year after the child's birth each time she had a need to express the milk"; and (2) failing to provide Plaintiff "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used to express breast milk."

61. The foregoing actions, policies and practices of Defendants violate the FLSA.

62. Defendants' actions were willful, in bad faith and in reckless disregard of clearly applicable FLSA provisions.

63. The FLSA provides, "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

64. "Although it does not appear that the Third Circuit has addressed the issue, at least six other circuit courts of appeals have affirmed cases where, in addition to an equal amount in liquidated damages, a plaintiff sought to recover non-economic damages, such as emotional distress damages." Green v. Ventnor Beauty Supply, Inc., 2019 WL 2099821 at n.1 (D.N.J. May 14, 2019) (citing Pineda v. JTCH Apartments, L.L.C., 843 F.3d 1062, 1065 (5th Cir. 2016) (citing the First, Sixth, Seventh, Eighth, and Ninth Circuits and noting "the uniform view of our sister circuits that damages for emotional distress are available" under the FLSA)).

65. A plaintiff is also entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id.

66. Defendants are liable to Plaintiff for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages; (2) an award of reasonable attorneys' fees and costs of this action; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (5) statutory penalties; and (6) all additional general and equitable relief to which Plaintiff is entitled.

<u>**COUNT II**</u>
**FLSA RETALIATION**
**29 U.S.C. § 215**

67. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

68. The FLSA prohibits retaliation by employers against employees for asserting their rights under the Act. 29 U.S.C. § 215(a)(3).

9

69. Defendants violated the FLSA's anti-relation provision when it took materially adverse employment actions against Plaintiff for asserting their rights under the Break Time for Nursing Mothers law.

70. As a result of Defendants' violations of the FLSA, Plaintiff has suffered damages, including, but not limited to: loss of employment, diminishment of career opportunities, past and future lost wages, reputational harm, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, and other harm, both tangible and intangible.

71. The foregoing actions, policies and practices of Defendants violate the FLSA.

72. Defendants' actions were willful, in bad faith and in reckless disregard of clearly applicable FLSA provisions.

73. The FLSA provides, "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

74. "Although it does not appear that the Third Circuit has addressed the issue, at least six other circuit courts of appeals have affirmed cases where, in addition to an equal amount in liquidated damages, a plaintiff sought to recover non-economic damages, such as emotional distress damages." Green v. Ventnor Beauty Supply, Inc., 2019 WL 2099821 at n.1 (D.N.J. May 14, 2019) (citing Pineda v. JTCH Apartments, L.L.C., 843 F.3d 1062, 1065 (5th Cir. 2016) (citing the First, Sixth, Seventh, Eighth, and Ninth Circuits and

noting "the uniform view of our sister circuits that damages for emotional distress are available" under the FLSA)).

75. A plaintiff is also entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id.

76. Defendants are liable to Plaintiff for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages; (2) an award of reasonable attorneys' fees and costs of this action; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (5) statutory penalties; and (6) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT III**
**TITLE VII DISPARATE TREATMENT**
**42 U.S.C. § 2000e-2**

122. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

123. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

124. Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex,

11

or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

125. In 1978, Congress enacted the Pregnancy Discrimination Act, 92 Stat. 2076, which added new language to Title VII's definitions subsection to specify that Title VII's "ter[m] 'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions.; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k); <u>Young v. United Parcel Serv., Inc.</u>, 135 S. Ct. 1344-45 (2015) (explaining "that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act.").

126. Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

127. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her sex and pregnancy.

128. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

129. Plaintiff's protected characteristics (sex and pregnancy) played a determinative factor in Defendants' decisions.

130. Defendants cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

131. Alternatively, Plaintiff's protected status played a motivating part in Defendants decisions even if other factors may also have motivated its actions against Plaintiff.

132. Defendants acted with the intent to discriminate.

133. Defendants acted upon a continuing course of conduct.

134. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages; (2) an award of reasonable attorneys' fees and costs of this action; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (5) statutory penalties; and (6) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT IV**
**TITLE VII HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 2000e-2**

135.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

136.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

137.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

138.     Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

139.     Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

140.     Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable nursing mother believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

141.     The harassing conduct directly refers to Plaintiff's sex traits and pregnancy.

142.     Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

14

143. Harassing conduct based on Plaintiff's sex and pregnancy filled the environment of Plaintiff's work area.

144. Defendants knew that the harassing conduct filled Plaintiff's work environment.

145. Harassing conduct occurred daily.

146. Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

147. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

148. The conduct was both severe and pervasive.

149. The conduct was humiliating.

150. The conduct unreasonably interfered with Plaintiff's work performance.

151. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

152. Defendants provided a futile avenue for complaint.

153. Defendants retaliated against Plaintiff for her complaints.

154. Defendants acted upon a continuing course of conduct.

155. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages; (2) an award of reasonable attorneys' fees and

costs of this action; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (5) statutory penalties; and (6) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT V
## TITLE VII RETALIATION
## 42 U.S.C. § 2000e-3

156.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

157.    Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
>
> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

158.    The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

159.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

16

160. Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

161. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a police officer from a district could constitute actionable retaliation because it "is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

162. Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

163. Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex was violated.

164. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

165. Defendants also discriminated against Plaintiff by taking materially adverse actions against third parties who engaged in protected activity on Plaintiff's behalf.

166. There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

167. Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

168. Defendants acted upon a continuing course of conduct.

169. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and Defendants' actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendant's antagonism and change in demeanor toward Plaintiff after Defendant became aware of Plaintiff's protected activity.

170. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages; (2) an award of reasonable attorneys' fees and costs of this action; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (5) statutory penalties; and (6) all additional general and equitable relief to which Plaintiff is entitled.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this complaint.

Respectfully submitted,

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
Derek Smith Law Group, PLLC
1 Pennsylvania Plaza, Suite 4905
New York, New York 10119
(267) 857-0849
ian@dereksmithlaw.com

Dated: January 1, 2024    *Attorneys for Plaintiff*